UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MELVIN CHAMPAGNE, ETAL.** | * | **CIVIL ACTION** |
| | * | |
| **versus** | * | **No. 13-299** |
| | * | **c/w 13-348** |
| | * | |
| **UNITED STATES OF AMERICA, ET AL.** | * | **SECTION "L" (5)** |

### ORDER AND REASONS

Before the Court is Defendant United States of America's Motion for Summary Judgment,[1] (Rec. Docs. 15, 27), and Defendants Progressive Paloverde Insurance Company's and Steven Conger's Motion for Summary Judgment, (Rec. Doc. 29). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

### I.     BACKGROUND

This case involves a car accident that took place on or about January 20, 2010. According to Plaintiffs' complaint, Plaintiffs Ira Landry and Melvin Champagne were driving north on LA 39 in Plaquemines Parish when Defendant Steven Conger crossed the center line of the highway, without warning, and caused a collision. (Rec. Doc. 1 at 2). Plaintiffs allege that the accident was caused by Conger's fault, negligence, and lack of skill. (Rec. Doc. 1 at 2). Plaintiffs claim that as a result of the accident they suffered "severe, painful, and disabling physical and mental injuries." (Rec. Doc. 1 at 3). At the time of the collision, Conger was employed by the Department of Agriculture as a federal grain inspector. (Rec. Docs. 20 at 2, 21

---

[1] Originally, the Government filed a motion to dismiss. However, on December 6, 2013, the Court converted this motion into a motion for summary judgment and gave the parties time to

1

at 1). In their complaint, Plaintiffs allege that Conger was "in the course and scope of his employment with Defendant United States of America, specifically with the Department of Agriculture, at the time and place of the accident." (Rec. Doc. 1 at 2). Therefore, Plaintiffs filed the present complaint in this Court naming the United States of America as the sole defendant. Plaintiffs assert that this Court has subject matter jurisdiction over the case pursuant to the Federal Tort Claims Act. (Rec. Doc. 1 at 1).

Previously, in January 2011, Plaintiffs filed a separate complaint in the 25th Judicial District Court for the Parish of Plaquemines. In that suit, Plaintiffs named Steven Conger, Progressive Paloverde Insurance Company ("Progressive"), and Encompass Insurance Company of America ("Encompass"), as Defendants. (Civil Action No. 13-348, Rec. Doc. 1-1 at 2). Plaintiffs named Progressive as the liability insurer of Defendant Conger and Encompass as the uninsured and underinsured motorist insurer for Plaintiffs. In January 2013, Plaintiffs amended their complaint to add the United States of America as a Defendant in that suit as well. On February 25, 2013, the Government removed that case to this Court pursuant to 28 U.S.C. § 1442(a)(1), which provides that "[a] civil action...that is commenced in State court and that is against or directed to [the United States or an agency thereof may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending...." The Court, realizing that both cases–Civil Action No. 13-299 and Civil Action No. 13-348–were related, consolidated the two matters. (Rec. Doc. 7).

**II.     PRESENT MOTIONS**

On September 18, 2013, the Government filed a Motion to Dismiss pursuant to

---

present additional materials. (Rec. Doc. 27).

Federal Rule of Civil Procedure 12(b)(1).  (Rec. Doc. 15).  The Government claims that Steven Conger was acting outside the scope of his federal employment when the car accident took place.  Therefore, the Government argued that it is not liable for Conger's negligent acts and this Court lacks subject matter jurisdiction under the Federal Tort Claims Act, 18 U.S.C. § 1346(b).  Plaintiffs filed a response to the Government's original motion in which they agree that Conger was not acting in the course and scope of his employment at the time of the accident.  (Rec. Doc. 21 at 1).  Plaintiffs claim that Conger was on a personal mission in his personal vehicle when the accident occurred.  Therefore, Plaintiffs ask the Court to grant the Government's motion and remand the case against Defendants Conger, Progressive, and Encompass.  (Rec. Doc. 21 at 5).

Defendant Progressive filed a memorandum in opposition to the Government's motion, which Defendant Encompass adopted as its own.  (Rec. Docs. 20, 22).  Progressive explains that Conger was on his way back from a store, while on standby at work, when the accident occurred.  Progressive argues that Conger was acting within the scope of his employment, as evidenced by the fact that he was being paid at the time of the accident and he was subject to the employer's control during that time.  (Rec. Doc. 20 at 14-16).

Citing the Fifth Circuit's opinion in *Montez v. Department of Navy*, 392 F.3d 147 (5th Cir. 2004), this Court found that the Government's jurisdictional challenge was actually a challenge to the existence of a federal cause of action.  Accordingly, the Court converted the motion into a motion for summary judgment.  (Rec. Doc. 27).  The Court gave the parties two weeks to submit any additional material necessary for the Court to rule on the motion for summary judgment.

On December 11, 2013, Defendants Progressive and Conger filed a cross motion for summary judgment.  (Rec. Doc. 29).

**III.    LAW & ANALYSIS**

    **A.    Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "On cross-motions for summary judgment, [a court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

    **B.    Course and Scope of Employment**

In an action under the FTCA, state law governs the question of whether a government employee was acting within the scope of employment. *Erby v. U.S.*, 424 F.Supp. 2d 180, 184 (D.D.C. 2006).

According to Louisiana Civil Code article 2320, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the

4

functions in which they are employed." The Louisiana Supreme Court explained that "in order for an employer to be vicariously liable for the tortious acts of its employee the 'tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest.'" *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96); 673 So. 2d 994, 996. The employee must be acting within the course and scope of his employment. This occurs when the act "is 'of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in party by a purpose to serve the employer.'" *Timmons v. Silman*, 99-3264 (La. 5/16/00); 761 So.2d 507, 510. In order to make this determination, the court should look at a variety of factors including:

> the payment of wages by the employer, the employer's power of control, the employee's duty to perform the particular act, the time place and purpose of the act in relation to service of the employer, the relationship between the employee's act and the employer's business, the benefits received by the employer from the act, the motivation of the employee for performing the act, and the reasonable expectation of the employer that the employee would perform the act.

*Orgeron v. McDonald*, 93-1353 (La. 7/5/94); 639 So. 2d 224, 227 (citing *Reed v. House of Decor, Inc.*, 468 So. 2d 1159 (La. 1985)).

The Louisiana Supreme Court has explained that "an employee who is traveling from home to work or returning from work to home is generally not within the course and scope of his employment. *Id.* at 227. Similarly, "[g]oing to and from lunch is ordinarily not a function in which an employee is employed, and the employer is ordinarily not liable for the employee's torts while going to and from lunch…" *Laird v. Travelers Indem. Co.*, 236 So. 2d 561, 564 (La. Ct. App. 1970) (citing *Cado v. Many*, 180

So. 185 (La. App. 1938); *Whittington v. Western Union Tel. Co.*, 1 So. 2d 327 (La. App. 1941)); *see also* Malone, Louisiana Civil Law Treatise, Vol. 13 s 163 (1980). ("Ordinarily, an employee who leaves his employer's premises and takes his noon hour meal at home or some other place of his choosing is outside the course of his employment from the time he leaves the work premises until he returns. In the absence of a further showing it is assumed that the nature of his employment has not affected his personal eating practices…").

In *Laird v. Travelers Indemnity Company*, the Louisiana Fourth Circuit held that an employee was not acting in the course and scope of his employment when he got in a car accident on his way to get lunch. The Fourth Circuit stated the "undisputed facts":

> …the alleged tortfeasor was employed in excavating a pipeline trench along a highway in an area to which no frequent public transportation is available, and at which there are no facilities from which employees could purchase lunch. The alleged tortfeasor worked and was only paid for eight hours, with an unpaid half-hour lunch period. He received no pay or allowance for traveling to and from work, which he did in his personal car. His lunch period was inadequate for walking to and from a place he could buy lunch. He had gone to lunch during his lunch period in his personal car and was returning to work when, allegedly due to his operation of his car, the accident from which plaintiff claims injury occurred.

*Laird*, 236 So. 2d at 564. The court found "nothing extraordinary" in this case to justify a departure from the general rule that travel to and from lunch is not within the course and scope of employment.

Of course, Louisiana courts have occasionally found exceptions to the rule regarding travel to and from work. For instance, in *Michaleski v. Western Preferred Casualty Company, et al.*, the Louisiana Supreme Court reversed a lower court's decision regarding an employee who

6

was returning to work from a trip to buy food. 472 So. 2d 18 (La. 1985). The lower court granted a motion for summary judgment in favor of the employer, finding that the employee was not acting in the course and scope of his employment, as a matter of law. The employee, Leger, was working as a motorman at an oil well. He worked twelve hour shifts, seven days on duty followed by seven days off duty. He received an hourly wage and an additional twelve dollars per day for food and gasoline. The crew stayed and slept in a trailer at the site. The employees often bought groceries a mile and a half away and cooked at the site. *Id.* at 19.

On the night in question, Leger and a co-worked had driven to a McDonalds that was located about five miles away from the site. On the way back from dinner, Leger closed his eyes from exhaustion and hit an oncoming car. *Id*. The Louisiana Supreme Court acknowledged the general rule that an employee is outside the course of employment while traveling to the employer's premises. *Id.* at 20. However, the Court explained that "[a]n exception…is recognized when transportation is furnished as an incident of employment, either through a vehicle, a conveyance and driver, or payment of expenses." *Id.* at 20 (citing *Griffin v. Catherine Sugar Co.*, 219 La. 846 (1951); *Welch v. Travelers Insurance Company*, 225 So. 2d 623 (La. App. 1 Cir. 1969); *Boutte v. Mudd Separators, Inc.*, 236 So. 2d 906 (La. App. 3 Cir. 1970); *Prothro v. Louisiana Paving Co., Inc.*, 399 So. 2d 1229 (La. App. 3 Cir. 1981)). Furthermore, the Court explained that an employee is within the course and scope of employment while "on a job connected mission which the employer had reason to expect would be performed." *Id.* at 21. Applying these principles to the facts of the case, the Court stated:

> An oil company employee, working "seven days on" with living quarters and a food and gas allowance furnished by the employer, who is returning to the work place from a necessary trip for himself and a co-worker to eat is in the course of his employment. Such a journey is necessitated by the employment, since all the men had to leave the rig site to purchase groceries or a

7

> meal…Returning from a trip to buy food was an activity arising out of the nature of the employment. The employer anticipated the necessity of these temporary absences, because it compensated the employees with a per diem for their food and gasoline expenses.

*Id.* The Court also emphasized that Leger's exhaustion was a "foreseeable consequence" of his twelve hour work day. *Id.*

Similarly, in *Orgeron on Behalf of Orgeron v. McDonald*, the Louisiana Supreme Court found that an employee who got in a car accident while driving to a dock to report to work was in the course and scope of his employment. 93-1353 (La. 7/5/94); 639 So. 2d 224, 227. The employee had just concluded a fourteen-day shift as a night cook on an offshore facility. He drove to the employer's main office in Houma to obtain his pay check, after which he planned to drive home to spend Christmas with his family. *Id.* At the office in Houma, the general manager instructed the employee that he was needed for a seven-day shift beginning the next morning. As he was driving to the dock the next morning, he got in a serious car accident. *Id.* at 226.

The Louisiana Supreme Court recognized that "[b]ecause an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route." *Id.* However, the Court found that this case was exceptional. The Court, applying the relevant factors, explained:

> In summary, although McDonald was not paid wages or expenses for his trip from Houma to Fourchon, his employer was in the business of dispatching workers to ports all over South Louisiana; the employer diverted him from his trip home after his fourteen-day work shift and took substantial control over his activities between the diverting and the time for McDonald's reporting to Fourchon, all for the benefit of ECS's business interest; the time, place and purpose of the travel under the emergency conditions was closely related to ECS's business; the travel under the circumstances was primarily for the benefit of the employer; the motivation of the employee for the travel, although including

> wages for the additional work hours, was to promote his employer's interest because of the special need; and the employer reasonably expected that he would make the special trip.

*Id.* at 228. The Court concluded that the employee was within the course and scope of his employment when he got in the car accident. *Id.* at 228.

In the present case, the facts are undisputed. On the date of the accident, Conger was working as a federal grain inspector. (Rec. Doc. 21 at 1). According to Conger's deposition, his work was affected by the weather. During rain or heavy fog work stopped at the facilities because the crew boats could not take him to the rigs. (Rec. Doc. 20-1 at 70). When this happened, he would remain nearby "on standby" waiting to resume normal work. (Rec. Doc. 20-1 at 70). Usually, he would sit in his car. (Rec. Doc. 20-1 at 23). When the weather improved, he would make the decision that standby was over and he would report back to the dock for work. (Rec. Doc. 20-1 at 70). Conger received a salary for his work, but he was eligible for overtime if he worked over eight hours on a given day. (Rec. Doc. 20-1 at 19). Conger did not experience a break in pay during his lunch break nor while he was on standby. (Rec. Doc. 20-1 at 70).

On the date of the accident, Conger reported for work at the Myrtle Grove Marine Terminal at 8:00 a.m., expecting to work a twelve hour shift. (Rec. Doc. 20-1 at 8). The fog was too heavy for the crew boat to pick him up, so he sat in his car for several hours. (Rec. Doc. 20-1 at 10). That day he brought stew to eat for lunch, but had nowhere to heat it. At that time, there was no facility for him to sit in or eat in while on standby. (Rec. Doc. 20-1 at 77). He drove his own vehicle to a nearby store to buy a cold sandwich to eat for lunch. (Rec. Doc. 20-1 at 10, 14). On his way back from buying a sandwich he got in a car accident with the Plaintiffs.

The facts in this case are similar to the facts in *Laird*, and a straight-forward

application of the general rule is also appropriate here. "Going to and from lunch is ordinarily not a function in which an employee is employed, and the employer is ordinarily not liable for the employee's torts while going to and from lunch…" *Laird v. Travelers Indem. Co.*, 236 So. 2d 561, 564 (La. Ct. App. 1970). The Court finds "nothing extraordinary" about the facts in the present case to warrant a departure from this general rule.

This was not a situation like the one involved in *Orgeron*, where the employer requested and caused the employee's travel and exerted control over his movement. *See Orgeron*, 639 So. 2d at 228. Here, the employer did not dictate or even suggest that Conger drive to the store to get lunch. This case is also distinguishable from the facts in *Michaleski*, because Conger was not paid for meals and travel expenses. *See* 472 So. 2d at 19. Furthermore, the Court finds no exceptional circumstances regarding Conger's employment, like in *Michaleski*, that should have alerted his employer that travel to lunch was inevitable. *Id.* Here, buying a sandwich was not an "activity arising out of the nature of the employment." *Cf. Michaleski*, 472 So. 2d at 21.

The factors that the Louisiana Supreme Court provided weigh heavily against a finding that Conger was in the course and scope of his employment during the accident. He was not compensated for food, travel time, or gas. *Cf. Brooks v. Guerrero*, 02-379 (La. App. 5 Cir. 10/29/02); 831 So. 2d 424, 427-28. His employer had no power of control over him, as he went to buy a sandwich. The fact that he was "on standby" makes this even more clear. There was no supervisor on duty that would call him when he needed to return. (Rec. Doc. 20-1 at78). According to his deposition testimony, he would decide when he needed to return to the dock if the weather cleared up. Conger had no professional duty to perform the act of buying a sandwich. The purpose of his trip was purely personal and had nothing to do with his job as a

10

federal grain inspector. His actions were not motivated by a desire to serve his employer and his employer received no benefit from this act. Lastly, there was no reason for his employer to expect that Conger would travel to lunch.

Defendant Progressive argues that the fact that Conger was paid during his lunch break weighs in favor of a finding that he was within the course and scope of his employment at the time. However, as the Government points out, Louisiana courts have explained that "wages" which are a factor to consider in determining vicarious liability, refers to "piecemeal or hourly wages rather than salary." *Hargrave v. Delaughter*, 2008-1168 (La. App. 3 Cir. 3/4/09); 10 So. 3d 245, 250. The employer did not deduct Conger's lunch break from his pay, however, Conger was also not being compensated for the task of getting lunch. His payment situation was more that of a salaried employee, and salaried employees are not considered in the course and scope of employment just because they get paid a salary. The factor to consider is whether the employer was "compensating the employee for the task at hand or the actual time spent while engaged in the activity." *Id.* Furthermore, even if Defendant Progressive is correct about the application of this factor, it alone is not conclusive. The fact that Conger was paid during his lunch break is not enough to overcome the weight of the other factors that this Court must consider.

## IV.     CONCLUSION

For the foregoing reasons, the Court finds that Conger was not acting within the course and scope of his employment when he was driving back from the store. Accordingly,

**IT IS ORDERED** that United States of America's Motion to Dismiss (Rec. Doc. 15) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Progressive Paloverde Insurance Company and

Steven Conger's Motion for Summary Judgment (Rec. Doc. 29) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Civil Action No. 13-348 is **REMANDED** to state court.

New Orleans, Louisiana, this 17th day of January, 2014

_____
UNITED STATES DISTRICT JUDGE